IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RONALD D. BROWN, Inmate #A15829, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL NO. 06-384-GPM |
| ) | |
| ROGER WALKER, JR., RONALD ) | |
| MEEKS, CHARLES HINSLEY, ALAN ) | |
| UCHTMAN, JACKIE MILLER, TERRI ) | |
| ANDERSON, TINA BEARDEN, ) | |
| ANDREW WILSON, DEBI ) | |
| MIDDENDORF, MICHAEL LOCKE, D. ) | |
| WESTERMAN, J. FRITZ, S. HANKINS, ) | |
| M. FORDSON, C/O RENOLDS, C/O ) | |
| HOOD, C/O WHITE, C/O MOORE, C/O ) | |
| HAMLIN, C/O COX, JOE HARPER, C/O ) | |
| CHANDLER, C/O CHILDRESS, C/O ) | |
| ASHBY, J. INMAN, EVA MOORE, and ) | |
| JOHN DOES, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

Plaintiff, an inmate in the Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief

>   may be granted; or
>   (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; certain claims are legally frivolous and thus subject to summary dismissal.

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(f) and 10(b), the Court finds it appropriate to break the claims in Plaintiff's *pro se* complaint and other pleadings into numbered counts, as shown below. The parties and the Court will use these designations in all future filings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

>   **COUNT 1:** Against Defendants Moore and Harper for unconstitutional retaliation and conspiracy.
>
>   **COUNT 2:** Against Defendants White and Hankins for unconstitutional use of excessive force and against unspecified defendants for failure to intervene.
>
>   **COUNT 3:** Against Defendants Renolds, Fritz, Chandler, and Furlough for unsanitary conditions of confinement in violation of the Eighth Amendment.
>
>   **COUNT 4:** Against Defendants Renolds, Fritz, Chandler, and Richelman for deliberate indifference to his serious medical needs.
>
>   **COUNT 5:** Against Defendants Bearden, Wilson, Locke, Westerman, Middendorf, and Anderson for violations of due process in a disciplinary proceeding.
>
>   **COUNT 6:** Against Defendants Childers, Renolds, Richelman, Hinsley, Inman, Ashby, Moore, Uchtman, and Miller for conditions of confinement in violation of the Eighth Amendment.
>
>   **COUNT 7:** Against Defendants Hamlin, Hood, and Fordson for verbal threats.

## COUNT 1

Plaintiff states that on April 28, 2004, he heard Corrections Officer Leroy (not a defendant) state to an unknown corrections officer, "that's him, it happened in 1993," while pointing at Plaintiff. On May 3, 2004, Defendant Moore removed Plaintiff from his cell and took him to see Defendant Harper. Defendant Harper told Plaintiff, "you had an incident with a female volunteer in the chapel in 1993, I want you to understand that no type of sexual misconduct will be allowed at Menard C.C.!" After the meeting Defendant Moore returned Plaintiff to his cell. The next day, an unnamed defendant came to Plaintiff's cell, told him to pack his belongings, and escorted him to West House. Plaintiff was not told why he was being moved. During his time in West House, Plaintiff noticed an unspecified corrections officer pointing him out to various other unspecified officers. Plaintiff states that this amounts to civil conspiracy and unconstitutional retaliation to move him from a cell house where he experienced more privileges to a cell house with fewer privileges for a prior action for which he was disciplined in 1993.

Although Plaintiff argues that these actions constitute improper "retaliation," the facts described do not fit that claim. Claims of improper retaliation arise when an inmate asserts that he has been mistreated in some way for exercising a constitutional right. Most frequently, these claims arise under the First Amendment, when a Plaintiff claims that he has been mistreated for complaining about his conditions of confinement or for a legitimate exercise of his First Amendment right to petition the government for redress of grievances. Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). The Seventh Circuit recently clarified that in order to qualify as protected speech, an inmate's

complaints or grievances must be "related to matters of public concern" rather than merely a "personal gripe" about a particular incident. *Pearson v. Welborn*, 471 F.3d 732, 740-41 (7th Cir. 2006); *see also McElroy v. Lopac*, 403 F.3d 855 (7th Cir. 2005); *Brookins v. Kolb*, 990 F.2d 308 (7th Cir. 1993).

Here, Plaintiff has not shown that he was mistreated because he exercised a constitutional right. He states that these officers took him to segregation based solely upon a prior incident of sexual misconduct with a chapel volunteer. Plaintiff has no constitutional right to a sexual relationship or to sexual misconduct with a prison volunteer, and in fact, such behavior is strictly in violation of prison rules. Therefore, what Plaintiff describes is not unconstitutional retaliation as contemplated under the Seventh Circuit's current jurisprudence.

Plaintiff's claims most closely resemble a claim that he was transferred to a more restrictive cellhouse without due process. When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her confinement impose "atypical and significant hardship...in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Seventh Circuit Court of Appeals has adopted an extremely stringent interpretation of *Sandin*. In this Circuit, a prisoner in disciplinary segregation at a state prison has a liberty interest in remaining in the general prison population only if the conditions under which he or she is confined are substantially more restrictive than administrative segregation at the most secure prison in that state. *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). If the inmate is housed at the most restrictive prison in the state, he or she must show that disciplinary segregation there is substantially more restrictive

than administrative segregation at that prison. *Id.* In the view of the Seventh Circuit Court of Appeals, after *Sandin* "the right to litigate disciplinary confinements has become vanishingly small." *Id.* Indeed, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty." *Id.*

In the case currently before the Court, Plaintiff was transferred to a more restrictive yet non-segregation cellhouse. Nothing in the complaint or exhibits suggests that the conditions that he had to endure there were substantially more restrictive than administrative segregation in the most secure prison in the State of Illinois. Further, an inmate has no liberty interest in movement outside of his cell. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Therefore, any due process claim regarding his transfer to a more restrictive unit is without merit.

Plaintiff also argues that his movement to the more restrictive cell was part of a civil conspiracy against him. Civil conspiracy claims are cognizable under § 1983. *See Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002) (recognizing conspiracy claim under § 1983). "[I]t is enough in pleading a conspiracy to indicate the parties, general purpose, and approximate date." *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002); *see also Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003); *Tierney v. Vahle*, 304 F.3d 734, 740 (7th Cir. 2002). Despite these liberal pleading standards, Plaintiff has failed to state a civil conspiracy claim under section 1983 because he has not shown that Defendants conspired to deprive him of any constitutional right. As described above, Defendants' behavior did not constitute retaliation, and Plaintiff's due process rights were not denied in moving him a different cell. Plaintiff's allegations that prison guards talked amongst each other about Plaintiff's prior misconduct does not state a constitutional claim. Without an allegation that these Defendants conspired to deny him of some constitutional right, Plaintiff has

failed to state a claim and Count 1 must be **DISMISSED** with prejudice from the action.  *See* 28 U.S.C. § 1915A.

### COUNT 2

Plaintiff states that on May 13, 2004, Defendant Bearden wrote two disciplinary reports against him for sexual misconduct, insolence, and disobeying a direct order.  Later the same day, his cell door was put on "deadlock," and Defendants White and Hankins, and another unspecified correctional officer took Plaintiff to segregation.  During transport, Defendant White and Defendant Hankins assaulted Plaintiff, punching him and kneeing him in the ribs.  Two unspecified defendants stood by and watched the assault.

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983.  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *DeWalt*, 224 F.3d at 619.  "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 6-7.  An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action. … [The] prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Id.* at 9-10 (internal quotation omitted); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).  Based on these legal standards and the facts alleged, Plaintiff may proceed on Count 2 of the complaint against Defendants White and Hankins.

Plaintiff also states that two unspecified corrections officers stood by and watched the assault but did nothing to stop. To the extent that Plaintiff argues these individuals are equally as liable for his injuries due to their failure to intervene, the Seventh Circuit Court of Appeals has examined this issue as it pertains to police officers who fail to intervene when a fellow officer exceeds his authority, and it stated:

> We believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge. That responsibility obviously obtains when the nonfeasor is a supervisory officer to whose direction misfeasor officers are committed. So, too, the same responsibility must exist as to nonsupervisory officers who are present at the scene of such summary punishment, for to hold otherwise would be to insulate nonsupervisory officers from liability for reasonably foreseeable consequences of the neglect of their duty to enforce the laws and preserve the peace.

*Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972); *see also Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (collected cases); *Archie v. City of Racine*, 826 F,2d 480, 491 (7th Cir. 1987). While Seventh Circuit law may support a potential claim regarding the failure to intervene to stop the assault, Plaintiff has not named these defendants and therefore cannot proceed against them at this point in the litigation. Therefore, any claim regarding failure to intervene to stop the assault is **DISMISSED** without prejudice. Plaintiff may file an amended complaint naming these individuals, but because there are not defendants associated with the claim at this point, it must be dismissed.

### COUNT 3

When Plaintiff arrived in segregation on May 13, 2004, he was put into a cell with feces smeared on the walls, a heavily-stained and foul-smelling mattress, a light which could not be turned off from inside the cell, and a faucet that ran continuously and could not be turned off. Plaintiff

informed Defendants Renolds, Fritz, Chandler, Furlough, and Counselor Flamm (not a defendant) about the cell conditions, but he did not receive cleaning materials for three days, and the light was not repaired for four days. He does not state whether the faucet was fixed.

The Eighth Amendment prohibiting cruel and unusual punishment is applicable to the states through the Fourteenth Amendment. It has been a means of improving prison conditions that were constitutionally unacceptable. *See, e.g., Robinson v. California*, 370 U.S. 660, 666 (1962); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994). As the Supreme Court noted in *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981), the amendment reaches beyond barbarous physical punishment to prohibit the unnecessary and wanton infliction of pain and punishment grossly disproportionate to the severity of the crime. *Id.*, *quoting Gregg v. Georgia*, 428 U.S. 153, 173 (1976). The Constitution also prohibits punishment that is totally without penological justification. *Gregg*, 428 U.S. at 183.

Not all prison conditions trigger Eighth Amendment scrutiny – only deprivations of basic human needs like food, medical care, sanitation, and physical safety. *Rhodes,* 452 U.S. at 346; *see also James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992). In order to prevail on a conditions of confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims. *McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter,* 501 U.S. 294, 302 (1991). The objective component focuses on the nature of the acts or practices alleged to constitute cruel and unusual punishment. *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992). The objective analysis examines whether the conditions of confinement exceeded contemporary bounds of decency of a mature civilized society. *Id*. The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes*, 452 U.S. at 347; *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989);

*Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir 1987).

In addition to showing objectively serious conditions, a plaintiff must also demonstrate the subjective component to an Eighth Amendment claim. The subjective component of unconstitutional punishment is the intent with which the acts or practices constituting the alleged punishment are inflicted. *Jackson*, 955 F.2d at 22. The subjective component requires a prison official had a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298; *see also McNeil*, 16 F.3d at 124. In conditions of confinement cases, the relevant state of mind is deliberate indifference to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837; *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994). The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 842. A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer the harm. *Jackson*, 955 F.2d at 22. It is well-settled that mere negligence is not enough. *See, e.g., David v. Cannon*, 474 U.S. 344, 347-48 (1986).

Based on these standards, Plaintiff may proceed on the conditions of confinement claim against Defendants Renolds, Fritz, Chandler, and Furlough.

## COUNT 4

Plaintiff states that after the assault described in Count 2, above, he requested medical treatment because of pain in his ribs and pain and numbness in his left arm. He began making requests for medical treatment on May 13, 2004, to Defendants Renolds, Fritz, Chandler, and Richelman, but he was not allowed to see a physician until June 2. Plaintiff states that his injuries

were so serious that he has been under the care of a number of doctors from June 2004 up to the time of filing the complaint in May 2006.

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle*, 429 U.S. at 104; *Farmer*, 511 U.S. 825. This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106; *see also Jones v. Simek,* 193 F.3d 485, 489 (7th Cir. 1999); *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996).

> A prisoner raising an Eighth Amendment claim against a prison official therefore must satisfy two requirements. The first one is an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at —, 114 S. Ct. at 1977. As the Court explained in *Farmer*, "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* The second requirement is a subjective one: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that the Court has defined as "deliberate indifference." *Id; see Hudson v. McMillian*, 503 U.S. 1, 5, 112 S. Ct. 995, 998, 117 L. Ed. 2d 156 (1992) ("[T]he appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'"); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'").

*Vance v. Peters,* 97 F.3d 987, 991-992 (7th Cir. 1996). However, the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.... Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. The Circuit also recognizes that a defendant's inadvertent error, negligence, or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation.

> Neglect of a prisoner's health becomes a violation of the Eighth Amendment only if the prison official named as defendant is deliberately indifferent to the prisoner's health – that is, only if he knows of and disregards an excessive risk to inmate health or safety.

*Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir. 1995) (internal quotation omitted); *see also Steele*, 82 F.3d at 179 (concluding there was insufficient evidence of doctor's knowledge of serious medical risk or of his deliberate indifference to that risk; emphasizing that even malpractice is not enough proof under *Farmer*); *Miller v. Neathery*, 52 F.3d 634, 638-39 (7th Cir. 1995) (applying *Farmer* mandate in jury instruction). However, a plaintiff inmate need not prove that a defendant intended the harm that ultimately transpired or believed the harm would occur. *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996).

Based on these legal standards and Plaintiff's allegations, Plaintiff may proceed against Defendants Renolds, Fritz, Chandler, and Richelman on Count 4 of the complaint.

### COUNT 5

Plaintiff states that on May 17, 2004, a hearing was held on the disciplinary ticket described in Count 2, above. Plaintiff was found guilty of sexual misconduct, insolence, and disobeying a direct order. He was disciplined with six months in segregation, and six-month demotion to c-grade, a six-month commissary restriction, and a three-month yard restriction. Plaintiff states that his witnesses were not called in the hearing, and that he received two disciplinary reports for his alleged

misconduct, but that the hearing was held on only one of them. He states that Defendant Westerman signed the report as a witnessing officer, but that Defendant Westerman did not observe the misconduct. Plaintiff states that the disciplinary reports were false and that he did not commit the alleged violations. Plaintiff's grievances regarding the reports and hearing were denied. Plaintiff argues that these discrepancies constitute violations of his due process rights.

As stated above, in Count 1, when a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon*, 494 U.S. at 125. An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her confinement impose "atypical and significant hardship...in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. As stated above, the Seventh Circuit Court of Appeals has adopted an extremely stringent interpretation of *Sandin*, whereby a prisoner in disciplinary segregation at a state prison has a liberty interest in remaining in the general prison population only if the conditions under which he or she is confined are substantially more restrictive than administrative segregation at the most secure prison in that state. *Wagner*, 128 F.3d at 1175. If the inmate is housed at the most restrictive prison in the state, he or she must show that disciplinary segregation there is substantially more restrictive than administrative segregation at that prison. *Id.* Therefore, after *Sandin* "the right to litigate disciplinary confinements has become vanishingly small." *Id.* Indeed, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty." *Id.*

In the case currently before the Court, Plaintiff was sent to disciplinary segregation for six

months. Nothing in the complaint or exhibits suggests that the conditions that he had to endure while in disciplinary segregation were substantially more restrictive than administrative segregation in the most secure prison in the State of Illinois. Therefore, Plaintiff's due process claim regarding his time in segregation is without merit.

Plaintiff was also demoted to c-grade and denied commissary privileges for six months and denied yard access for three months. These allegations do not present a viable constitutional claim. *See, e.g., Thomas v. Ramos,* 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein) (no protected liberty interest in demotion to c-grade status and loss of commissary privileges). Accordingly, Plaintiff has failed to state a due process claim regarding these disciplinary reports and subsequent hearing. Count 5 is **DISMISSED** with prejudice from the action. *See* 28 U.S.C. § 1915A.

## COUNT 6

Plaintiff states that on May 24, 2004, he was moved to another cell. Plaintiff complains that the light in the new segregation cell was on 24 hours a day. He informed Defendant Childers, Renolds, Richelman, Hinsley, Inman, Ashby, and Moore, but was told the light would not be repaired. Defendants Uchtman and Miller denied grievances about the light.

Based on the legal standards described in Count 3, above, Plaintiff has failed to state a claim upon these facts because he has failed to show how the light being on for 24 hours a day, taken alone (he did not describe other conditions of the cell) deprived him of the minimal civilized measure of life's necessities, as required to state the objective component of an Eighth Amendment conditions of confinement claim. As such, Count 6 is **DISMISSED** with prejudice from the action. *See* 28 U.S.C. § 1915A.

COUNT 7

Plaintiff states that on July 6, 2004, Defendant Hamlin threatened to punch Plaintiff in the eye; on October 21, 2004, Defendant Hood made an unspecified threat against Plaintiff; and on November 4, 2004, Defendant Fordson threatened to kill him.

It is well-established that isolated, infrequent incidents of threats or other verbal abuse do not give rise to a cognizable claim under § 1983. *See DeWalt*, 224 F.3d at 612 ("standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws"); *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997); *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992); *Oltarzewski v. Ruggerio,* 830 F.2d 136, 139 (9th Circ. 1987) (allegations of verbal abuse or harassment insufficient to state a claim under § 1983); *Martin v. Sargent,* 780 F.2d 1334, 1338 (8th Cir. 1985) ("verbal threats are not constitutional violations cognizable under § 1983"); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (plaintiff's allegations that sheriff threatened to hang him insufficient to state a claim under § 1983).

Based on these legal standards, Plaintiff has failed to state a claim upon these facts. Count 7 is **DISMISSED** with prejudice from the action. *See* 28 U.S.C. § 1915A.

SUMMARY

In summary, Plaintiff may proceed against Defendants White and Hankins on the excessive force claim in Count 2; Defendants Renolds, Fritz, Chandler, and Furlough on Count 3; and Defendants Renolds, Fritz, Chandler, and Richelman on Count 4. Counts 1, the failure-to-intervene claim in Count 2, and Counts 5, 6, and 7 are **DISMISSED** from the action. Because all claims against them have been dismissed, all other named defendants are **DISMISSED** from the action. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("a plaintiff cannot state a claim against a

defendant [merely] by including the defendant's name in the caption").

The Clerk of Court is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for *Defendants White, Hankins, Renolds, Fritz, Chandler, Furlough, and Richelman*.  The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on *Defendants White, Hankins, Renolds, Fritz, Chandler, Furlough, and Richelman* in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure.  Process in this case shall consist of the complaint, applicable Forms 1A and 1B, and this Memorandum and Order.  For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form. Service shall not be made on the Unknown (John Doe) Defendants until such time as Plaintiff has identified them by name on a USM-285 form and in a properly filed amended complaint.  Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to former employees of Illinois Department of Corrections (I.D.O.C.) who no longer can be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with that Defendant's last-known address upon issuance of a Court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal.  Address information obtained from I.D.O.C. pursuant to such order shall not be maintained in the Court file nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received. If a waiver of service is not returned by a Defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk of Court prepare a summons for that Defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Memorandum and Order upon that Defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for that Defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said Defendant. Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required. Costs of service will be taxed against the personally-served Defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless said Defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon Defendant or, if appearance has been entered by counsel, upon their attorneys, a copy of every further pleading or other document submitted for consideration by this Court. He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to Defendants or their counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule of the United States District Court for the Southern District of Illinois

72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his whereabouts. This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs. Failure to do so will result in dismissal of this action pursuant to Federal Rule of Civil Procedure 41(b).

**IT IS SO ORDERED.**

DATED: 07/27/07

s/ G. Patrick Murphy
G. Patrick Murphy
Chief United States District Judge